IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES D. RABY, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-765 |
| | § | |
| GARY JOHNSON, EXECUTIVE DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| DOUG DRETKE, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| CORRECTIONAL INSTITUTIONS DIVISION, | § | |
| JOE FERNALD, SENIOR WARDEN, | § | |
| HUNTSVILLE UNIT, HUNTSVILLE, TEXAS AND | § | |
| UNKNOWN EXECUTIONERS, | § | |
|     *Defendants*. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Charles D. Raby ("Raby") is a Texas death row inmate. He has filed an action for injunctive relief under 42 U.S.C. § 1983 to bar his execution by means of the execution protocol currently used by the State of Texas. On September 26, 2007, this Court stayed the case pending a decision by the Supreme Court in *Baze v. Rees*, addressing a similar challenge by two Kentucky inmates. The Supreme Court decided *Baze* on April 16, 2008. *Baze v. Rees*, 128 S.Ct. 1520 (2008). This Court lifted the stay on April 21, 2008, and the parties filed supplemental briefs addressing the *Baze* decision. On June 17, 2008, defendants moved for summary judgment. On July 7, 2008, Raby moved to continue the summary judgment motion under FED.R.CIV.P. 56(f). For the reasons stated below, Defendants' motion for summary judgment is granted, Plaintiff's motion to continue the summary judgment motion is denied, and the complaint is dismissed with prejudice.

I. Background

Raby was convicted of capital murder and sentenced to death in June, 1994. The Texas Court of Criminal Appeals affirmed his conviction and sentence in 1998, *Raby v. State*, 970 S.W.2d 1 (Tex.Crim.App.1998), and the United States Supreme Court denied certiorari, *Raby v. Texas*, 525 U.S. 1003 (1998). Raby unsuccessfully petitioned for state habeas corpus relief. He filed a federal petition for a writ of habeas corpus which this court denied on November 27, 2002 The United States Court of Appeals for the Fifth Circuit denied Raby's application for a certificate of appealability, and the Supreme Court denied Raby's petition for a writ of certiorari on June 14, 2004, *Raby v. Dretke*, 542 U.S. 905 (2004).

On August 26, 2004, Raby initiated this action under 42 U.S.C. § 1983. Raby asserts that the combination of drugs used by the State of Texas in administering lethal injections may have the effect of paralyzing the prisoner while leaving him fully conscious to experience excruciating pain as the drug cocktail renders him unable to breathe and causes cardiac arrest. He also contends that the people administering the drug cocktail are inadequately trained for the task. Raby seeks an injunction barring the use of this particular execution protocol.

II. Analysis

A. Standard of Review

A party seeking summary judgment bears the burden of informing the district court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries this burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* All justifiable inferences to be drawn from the underlying facts must

2

be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Counsel., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

    B.  *Baze v. Rees*

In *Baze*, the Supreme Court noted that at least 30 of the 36 states employing capital punishment use the same combination of drugs at issue in *Baze*. 128 S.Ct. at 1527. The record in this case demonstrates that Texas is one of those states. *See* Def. Supp. Br. at Ex. A.

Raby nonetheless argues that the Texas protocol may not pass constitutional muster. Members of the team responsible for inserting the IV under the Kentucky protocol at issue in *Baze* were required to have at least one year of professional experience as a certified medical assistant, phlebotomist, EMT, paramedic, or military corpsman. Kentucky actually employed a phlebotomist and an EMT. *Id.* at 1533. The written qualifications for serving on the IV team in Texas are the same as in Kentucky. Raby argues that the fact that Texas could employ someone meeting the written qualifications, but with less training or experience than a phlebotomist or EMT, as actually used by Kentucky, is a critical distinction.

Raby also cites 13 executions out of the more than 400 performed by Texas since 1982 in which some complication occurred. These range from witness statements that the inmate "had not died easily," to delays caused by difficulty in finding an adequate vein, to lapses of more than ten minutes between injection and death. *See* Plaintiff's Supplemental Brief at 12-13. These arguments do not stand up in light of *Baze*.

Reviewing the history of capital punishment in the United States, the Court noted that it "has never invalidated a State's chosen procedure for carrying out a sentence of death . . . ." *Baze*, 128 S.Ct. at 1530. Rather, the Court has consistently held, often citing examples from English history,

that such punishment would violate the Eighth Amendment only if its purpose was to inflict unnecessary pain. "What each of the forbidden punishments had in common was the deliberate infliction of pain for the sake of pain – superadding pain to the death sentence through torture and the like." *Id.* (Internal quotation marks omitted).

The Court did not dismiss out of hand that the possibility of inadvertent future harm through, for example, failure to properly follow the execution protocol, could violate the Eighth Amendment, but the burden of proving such hypothetical future harm is very high.

> To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be "*sure or very likely* to cause serious illness and needless suffering," and give rise to "sufficiently *imminent* dangers." *Helling v. McKinney*, 509 U.S. 25, 33, 34-35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis added). We have explained that to prevail on such a claim there must be a "substantial risk of serious harm," an "objectively intolerable risk of harm" that prevents prison officials from pleading that they were "subjectively blameless for purposes of the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 842, 846 and n. 9, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
>
> Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual. In *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed.2d 422 (1947), a plurality of the Court upheld a second attempt at executing a prisoner by electrocution after a mechanical malfunction had interfered with the first attempt. The principal opinion noted that "[a]ccidents happen for which no man is to blame," *id.* at 462, 67 S.Ct. 374, and concluded that such "an accident, with no suggestion of malevolence," *id.* at 463, 67 S.Ct. 374, did not give rise to an Eighth Amendment violation, *id.* at 463-64, 67 S.Ct. 374.
>
> * * *
>
> In other words, an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while

> regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a "substantial risk of serious harm." [*Farmer*], [511 U.S.] at 842, 114 S.Ct. 1970.

*Id.* at 1530-31.

The Court goes on to note that 36 states and the federal government use lethal injection, and that 30 states and the federal government use some variation of the Kentucky protocol challenged in *Baze*. "[I]t is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated." *Id.* at 1532. The Court then rejected claims that the risk that the drugs would be improperly prepared or that IV lines would be improperly inserted stated an Eighth Amendment violation. *Id.* at 1533-34. The Court concluded that

> A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. *A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard*.

*Id.* at 1537 (emphasis added).

There is no dispute that the Texas protocol is substantially similar to the Kentucky protocol. Raby's Eighth Amendment argument rests entirely on the hypothetical possibilities of human error or failure to follow the protocol. These hypotheticals are insufficient to remove the Texas procedure from the safe harbor created by *Baze*. Accordingly, Defendants are entitled to summary judgment.

    C.    <u>Rule 56(f)</u>

Rule 56(f)(2) of the Federal Rules of Civil Procedure provides: "If the party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present

facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . ." A request to stay summary judgment under Rule 56(f) must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41 44 (1st Cir. 1998) (internal quotation marks and citations omitted).

Raby requests additional discovery that he hopes will uncover specific instances in which an execution encountered complications, or in which the written protocol was not followed. Assuming that Raby could develop such facts through additional discovery, they would be insufficient to avoid summary judgment. As discussed above, there is no basis to dispute that the Texas execution protocol is substantially similar to the Kentucky protocol upheld in *Baze*. Therefore, under the safe harbor established by *Baze*, Raby cannot demonstrate that the Texas procedure violates the Eighth Amendment. Accordingly, additional discovery would be futile.

III. Order

For the foregoing reasons, it is ORDERED that:

1. Defendants' Motion For Summary Judgment (Docket Entry 50) is **GRANTED**;

2. Plaintiff's Motion For Continuance (Docket Entry 55) is **DENIED**; and

3.	The First Amended Complaint (Docket Entry 4) is **DISMISSED with prejudice**.

The Clerk shall notify all parties and provide them with a true copy of this Order.

Signed at Houston, Texas on October 27, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY